**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**CORPORATE AWARD
CONSULTANTS, INC.,**

                 **Plaintiff,**

   **v.**                                 **Case No. 1:11-cv-416-HJW**

**INSPIRUS, LLC,**

                 **Defendant**

<u>**ORDER**</u>

      **This matter is before the Court upon the "Motion to Reactivate Proceedings" (doc. no. 13) by plaintiff Corporate Award Consultants, Inc. ("CAC"). Also pending is the "Motion to Dismiss or Transfer" (doc. no. 6) by defendant Inspirus, LLC ("Inspirus"), which plaintiff opposes. Having fully considered the record, including the pleadings, motions and memoranda (doc. nos. 6, 7, 9, 11, 13-15), and attached exhibits, the Court will <u>grant</u> the plaintiff's motion, <u>lift the stay</u>, and <u>deny</u> the defendant's motion to dismiss or transfer, for the following reasons:**

<u>**I. Factual Allegations and Procedural History**</u>

      **At issue are two related complaints filed in separate courts in Texas and Ohio. The Texas case was filed on May 12, 2011, while the Ohio case was filed on June 24, 2011. Both are now in federal court. Although the relevant facts for purposes of jurisdiction are largely undisputed, the parties dispute whether the present case may go forward. In other words, they dispute under the "first-filed" rule whether the cases involve substantially similar parties and issues.**

      **As for the underlying facts, the complaint before this Court indicates that**

Inspirus, LLC (a Texas company) retained CAC (a Kentucky company) in 2000 to act on its behalf as an independent sales representative in Ohio and Kentucky (doc. no. 1 at ¶ 1).  Dennis Egan is the president/owner of CAC, and he personally signed a "Confidentiality Agreement" with Inspirus (doc. no. 7-1 at 9-11) regarding the dissemination of Inspirus' proprietary and/or confidential information.[1]  The Confidentiality Agreement between Egan and Inspirus contained 1) a forum selection clause indicating that disputes "arising out of that Confidentiality Agreement" would be litigated in the courts in Ft. Worth, Texas, and 2) a choice of law provision indicating that Texas law would apply.  The Confidentiality Agreement did not contain any provisions regarding the payment of commissions, and CAC was not a party to the Confidentiality Agreement.

CAC marketed Inspirus' products, negotiated long term sales contracts with customers ("Term Agreements"), and received compensation on a commission basis (doc. no. 1 at ¶ 1).  Inspirus agreed to pay commissions to CAC based on the gross sales of its products reflected by each Term Agreement (¶ 9).  CAC obtained multiple "Term Agreements" with its customers, totaling over $800,000.00 in annual sales (¶ 10).  The payment of sales commissions by Inspirus to CAC apparently proceeded under an oral agreement (doc. no. 7-1 at ¶ 4.2).

By early 2011, the parties' relationship had soured.  In its complaint, CAC alleges that Inspirus  representatives (Michael Cobb and Robbie Floyd) flew to Ohio

---

[1] Inspirus, LLC was formerly known as Diamond H Recognition, Inc. (doc. no. 7-5, Affidavit),as reflected in the Confidentiality Agreement.

to meet with CAC's customers in an effort to secure assurances that those customers would continue to honor the ongoing Term Agreements, even if Inspirus cut CAC out of the deal altogether (doc. no. 1 at ¶¶ 13, 49). In March of 2011, Inspirus then sent a letter to Egan terminating their long-standing business relationship "for all purposes," effective March 15, 2011 (¶ 12). The letter indicated that Inspirus would pay commissions on paid invoices accrued through March 31, 2011, by the 15th of April, but would make no further payments (¶ 12). Despite requests by CAC, Inspirus refuses to pay any further commissions allegedly owed to CAC under the ongoing Term Agreements that CAC had negotiated (¶ 14). CAC asserts that Inspirus owes commissions for sales under existing Term Agreements with various customers, including Humana, Speedway, Marathon Oil, SuperAmerica, Camco, R.R. Jones, and St. Elizabeth Healthcare (¶¶ 17-19). The race to the courthouse then began.

On May 12, 2011, Inspirus filed suit against CAC and Egan in state court in Texas, contending that Egan had encouraged a customer (St. Elizabeth's Hospital) to switch from Inspirus' product to a competing product (doc. no. 7-1 at ¶ 4.3).[2] Inspirus alleged that, based on Egan's sales pitch and his alleged use of Inspirus' proprietary information in violation of the Confidentiality Agreement, Inspirus lost this customer (doc. no. 7-1, state court complaint at ¶ 4.3). Inspirus complains that this customer had generated net revenues to Inspirus of over $50,000.00 annually.

_____

[2]Although Inspirus refers "St. Elizabeth's Hospital in Tennessee," CAC points out that this hospital had been a customer of CAC for over twenty years and is actually in Kentucky (doc. no. 7-3 at 7, 19).

In its Texas complaint, Inspirus asserted claims for breach of contract, breach of fiduciary duty, tortious interference with existing contract, tortious interference with prospective business relationship, and declaratory judgment. After that case was removed to United States District Court for the Northern District of Texas, Fort Worth Division, CAC and Egan moved to dismiss for lack of personal jurisdiction over them in Texas.

On June 24, 2011, CAC filed the present five-count complaint against Inspirus in the United States District Court for the Southern District of Ohio, seeking to recover unpaid sales commissions pursuant to Ohio Rev. C. § 1335.01. CAC asserted claims for breach of express and implied contract, unjust enrichment and/or quantum meruit, promissory estoppel, declaratory relief,[3] and tortious interference with CAC's business relationships (doc. no. 1, Counts I-V). Dennis Egan is not named as a party in this Ohio action. On July 26, 2011, Inspirus moved to dismiss this Ohio federal case or transfer it back to the federal court in Texas, based on the "first to file" rule and the forum selection clause in the Confidentiality Agreement (doc. no. 6 at 1).

On August 9, 2011, the District Court in Texas dismissed that entire lawsuit (doc. no. 9, attached exhibit), but then reinstated the case on August 12, 2011 (doc. no. 11 at 2). On September 14, 2011, the present Court granted an unopposed request for a temporary stay of proceedings in this case while the District Court in

_____

[3]CAC asks for a declaration that "Inspirus must honor the terms of its promise to pay commission to CAC for the duration of all Term Agreements" (doc. no. 1 at ¶ 44).

Texas resolved the jurisdictional issues before it.   Subsequently, on September 20, 2011, the District Court in Texas  dismissed CAC as a party from that lawsuit for lack of personal jurisdiction (doc. no.  13-1 "Final Judgment").

**II.  Discussion**

Given that the Texas court has resolved the jurisdictional issue and dismissed CAC for lack of personal jurisdiction, and given that the Texas court's consideration of such issue was the stated reason for the temporary stay in the present case, the stay would appear to have little further purpose.  Inspirus acknowledges that "it is appropriate to lift the stay by the terms of the Court's Order," but nonetheless contends that "the factors influencing a court's decision to exercise the 'first-filed' rule still weigh in favor of dismissal or transfer of this matter to Texas or a stay notwithstanding the dismissal of CAC from the Texas case" (doc. no. 14 at 1).[4]

Inspirus points to the well-known general "first-to-file" rule and argues that "an action involving similar parties and issues that was filed previously in another federal court should generally proceed to judgment and the latter-filed suit should be stayed, dismissed, or transferred"(doc. no. 14 at 1-2).

The Court of Appeals for the Sixth Circuit has explained that the first-to-file rule "encourages comity among federal courts of equal rank." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007) (citing AmSouth Bank v. Dale, 386 F.3d 763, 791 n. 8 (6th Cir. 2004).  When actions involving "nearly identical parties and issues" have been filed in two federal district courts,

---

[4]Personal jurisdiction over CAC in Ohio is not disputed.

the first-filed suit "should *generally* proceed to judgment." <u>Id</u>. (italic in original) (quoting <u>Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc.</u>, 16 Fed.Appx. 433, 437 (6th Cir. 2001). However, the Court of Appeals for the Sixth Circuit has also explained that "the first-filed rule is not a strict rule, and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment." <u>Id</u>. (citing <u>AmSouth Bank</u>, 386 F.3d at 791 n. 8). Courts have discretion to dispense with the rule where equity so demands. <u>Id</u>. "Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." <u>Id</u>. at 551-52. Moreover, there is a "presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." <u>Id</u>.; <u>AmSouth Bank</u>, 386 F.3d at 791 n. 8.

In the present case, Inspirus seeks the benefit of the "first-filed rule" and asserts that the Texas case "involves almost identical parties" and "substantially similar issues" (doc. no. 14 at 2). However, this assertion does not hold up under careful examination of the pleadings at issue. The Texas case is between Inspirus and Egan, whereas the present Ohio case is between CAC and Inspirus. Dennis Egan is not a party here. Of course, for the rule to apply, "both the issues and the parties need to "substantially overlap." <u>Buffalo Wild Wings, Inc. v. BW Rings, LLC</u>, 2010 WL 4919759 (S.D.Ohio 2010).

As to whether the cases involve "substantially similar issues," the main issue in the Texas case is whether Egan breached the Confidentiality Agreement when he

allegedly used proprietary information when he "flipped" a customer (St. Elizabeth's Hospital) to a competing product.    In the Ohio case, the main issue is whether Inspirus owes CAC for unpaid commissions under "Term Agreements" with various customers, including Humana, Speedway, Marathon Oil, SuperAmerica, Camco, R.R. Jones, and St. Elizabeth Healthcare.  On its face, the Ohio complaint does not appear to assert "substantially similar" issues as the Texas case.

Moreover, CAC aptly points out that Inspirus' present arguments are flatly contradicted by Inspirus' own arguments to the federal court in Texas (doc. no. 15 at 2).  CAC attaches copies of motions and memoranda which contain those specific representations by Inspirus in the Texas action. This Court may take judicial notice of proceedings in other courts of record.  Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th Cir. 1980) (quoting Granader v. Public Bank, 417 F.2d 75, 82-83 (6th Cir. 1969));  Lyons v. Stovall, 188 F.3d 327, 333 n. 3 (6th Cir. 1999); see also, e.g., Holler v. Hartford Life & Accident Ins., 737 F.Supp.2d 883, 893 (S.D. Ohio 2010) (taking judicial notice of other court orders).

CAC points out that Inspirus repeatedly acknowledged in the Texas case that the issues raised there were "separate and apart" from any issues in the Ohio case (doc. no. 14 at 2).  Inspirus acknowledged that "any alleged contract between CAC and Inspirus purportedly requiring Inspirus to pay commissions to CAC is separate and apart from the confidentiality agreement at issue before this Court" (doc. no. 15 at 2, quoting from Exhibit A at ¶ 4.3).  Inspirus also acknowledged in Texas that "[t]he outcome of this lawsuit will have no preclusive or prejudicial effect on CAC's

claims filed in the Southern District of Ohio for commissions [that] CAC claims are owed to it" (¶ 1.1). Thus, according to Inspirus (in Texas), the issues in the two cases are <u>not</u> substantially similar. Inspirus' present arguments to this Court are entirely inconsistent with its previous arguments. A careful reading of the respective complaints does not indicate that "substantially similar" claims are actually at issue. Inspirus' Texas counsel correctly apprised the situation.

Although the Texas complaint did include a request "in the alternative" for a declaration that "Egan has breached the Confidentiality Agreement and, therefore, does not have the right to the payment of commissions from Inspirus" (doc. no. 7-1 at ¶ 5.2), the requested declarative relief would not logically flow from the substantive claim asserted there. Additionally, as already noted, there is a "presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." <u>Certified Restoration</u>, 511 F.3d at 535; <u>AmSouth Bank</u>, 386 F.3d at 791 n. 8. The Ohio complaint here involves substantive claims regarding whether Inspirus owes commissions under the Term Agreements of various customers. Although Inspirus contends that the cases involve "competing claims arising from alleged obligations among Inspirus and Egan/CAC" (doc. no. 14 at 2), this contention is generalized and fails to overcome the presumption in favor of the substantive suit.

To the extent that Inspirus persists in arguing that the "first-to-file" rule weighs in favor of further stay of the present case or for transfer back to the same federal court in Texas that just dismissed CAC for lack of personal jurisdiction, this

argument is illogical and merits no further discussion.  In short, the present case may now proceed.

Accordingly, the plaintiff's "Motion to Reactivate Proceedings" (doc. no. 13) is GRANTED;  the temporary stay imposed by this Court's previous order (doc. no. 12) is LIFTED; the defendant's "Motion to Dismiss or Transfer" (doc. no. 6) is DENIED; and the Clerk of Court is directed to issue a Preliminary Pretrial Order.

IT IS SO ORDERED.


s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court